Saul S. Streit, J.
This is an application hy Walter G. McGahan, a taxpayer of the City of New York, to compel the Mayor, and the chairman and the director of the New York City Community Mental Health Board to permit the applicant to inspect (1) minutes of meetings of the board for the years 1954-1957; (2) reports of field investigators which resulted in a press release, issued by the director, Dr. Greenhill, and dated August 15, 1957; and (3) all reports made by Dr. Greenhill to the board relating to the “aforesaid investigation” by the field investigators.
The respondents have made the minutes available to inspection by the applicant. They state that no reports to the board by Dr. Greenhill, relating to the above-mentioned investigation have ever been made, and that, therefore, there are no reports by Dr. Greenhill which may be inspected. The only item which remains consists of the reports made to Dr. Greenhill by certain field investigators, whom he directed to make an investigation of the impact of crimes upon the mental and emotional health of people living in certain areas of Washington Heights.
By chapter 10 of the Laws of 1954, the State Legislature adopted article 8-A of the Mental Hygiene Law. That article *338 is entitled “Community Mental Health Services Act”. Its declared purpose (§ 190, subd. 2) is to encourage the development of preventive, rehabilitative and treatment services through new community health programs and the improvement and expansion of existing community services. The legislation was motivated by the fact that16 Increasing numbers of persons afflicted with psychiatric disorders require care and treatment in mental institutions ” (§ 190, subd. 2, supra). Article 8-A (supra) authorizes cities and counties to provide for the establishment of local community health boards, which shall have the power to appoint a psychiatrist to act as director (§§ 190-a, 190-b, 190-c, subd. [f]). It further provides that the director of each board shall be under a duty to “ carry on such studies as may be appropriate for the discharge of his duties or the promotion of mental health or prevention of psychiatric disorders ” (§ 190-d, subd. [f]). Pursuant to the authorization contained in article 8-A (supra) a local law was adopted in New York City, which was concurred in by the Board of Estimate and approved by the Mayor (Local Laws, 1954, No. 116 of City of New York) which is entitled “ A local law to amend the New York city charter by establishing the New York city community mental health board ” and which commences with the following language:1 ‘ Section 1. The New York City charter is hereby amended by adding thereto a new chapter, to follow chapter forty-eight, to be chapter 49 to read as follows: ”. The local law proceeds to amend the charter by creating the New York City Community Mental Health Board, with authority to appoint a psychiatrist as the board’s director (§§ 1120, 1121, subd. a, par. 7). Section 1122 (subd. a, par. 6) empowers the director to “ Carry on such studies as may be appropriate for the discharge of his duties or the promotion of mental health or prevention of psychiatric disorders ”.
On August 15, 1957 Dr. Greenhill, the director of the New York City board, issued a press release which received wide publicity. He stated that four field investigators had been sent into the Washington Heights area to study the emotional impact of recent juvenile crimes upon the population in the area. He concluded the press release with a statement that the findings of the investigators (described as a “ mental health disaster team ”) “ will be further studied by the staff of the New York City Community Mental Health Board with the objective of devising measures of preventing mental sickness in. the Washington Heights area as a result of the present social disturbance ”.
*339 Section 894 of the City Charter expressly provides that the provisions of that section, which authorize inspection of city records by a taxpayer, “ shall not apply to any papers prepared * # * for use in any investigation authorized by this charter ”. The reports of the four field investigators to Dr. Greenhill are clearly papers prepared for use in an investigation authorized by the charter. They were prepared for use by Dr. Greenhill in connection with the studies or investigations which he was authorized to make for ‘ ‘ the promotion of mental health or prevention of psychiatric disorders ”. Such studies or investigations are authorized by paragraph 6 of subdivision a of section 1122 of the charter, which was added by the 1954 amendment of the charter by Local Laws, 1954, No. 116, of City of New York. “ Studies ” are “ investigations ” within the meaning of section 894 (supra). The notice of motion itself refers to the members of the “ disaster team” as “investigators ” and asks for Dr. Greenhill’s reports “ relating to the aforesaid investigation ” (italics supplied).
Section 51 of the General Municipal Law, which contains no exemption similar to that provided for in section 894 of the New York Charter, is, to the extent of said exemption, superseded by section 894. This was squarely held in the recent case of Matter of Cherkis v. Impellitteri (307 N. Y. 132). The Court of Appeals said (p. 141), referring to the exemptions contained in section 894 (supra): “ In these respects, sections 893 and 894 supersede section 51 of the General Municipal Law ’ ’. The court stated (p. 141) that the exemption applies to “ papers prepared for use in investigations authorized by the charter ”.
In view of the controlling exemption contained in section 894 (supra) of papers prepared for use in any investigation authorized by the charter, the application for permission to inspect the reports made by the “ field investigators ” to Dr. Greenhill must be denied.
Motion denied.